[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-11505

_____

D.C. Docket No. 1:94-cr-00067-WS-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

STEVEN JONES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

_____

No. 19-10758

_____

D.C. Docket No. 1:05-cr-20916-WPD-3

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ALFONSO ALLEN,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Southern District of Florida
——————————————

————————————————

No. 19-11955
——————————————

D.C. Docket No. 2:99-cr-14021-DMM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WARREN LAVELL JACKSON,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Southern District of Florida
——————————————

_____

No. 19-12847
_____

D.C. Docket No. 1:08-cr-20190-JEM-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

THOMAS JOHNSON,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(June 16, 2020)

Before WILLIAM PRYOR, Chief Judge, GRANT, Circuit Judge, and JUNG,[*]
District Judge.

WILLIAM PRYOR, Chief Judge:

These appeals require us to determine whether the district courts erred in

denying four motions for reduced sentences under the First Step Act of 2018. That

Act permits district courts to apply retroactively the reduced statutory penalties for

---

[*] Honorable William F. Jung, United States District Judge for the Middle District of
Florida, sitting by designation.

crack-cocaine offenses in the Fair Sentencing Act of 2010 to movants sentenced before those penalties became effective. Steven Jones, Alfonso Allen, Warren Jackson, and Thomas Johnson were sentenced for crack-cocaine offenses before the effective date of the Fair Sentencing Act and sought reduced sentences under the First Step Act. The district courts denied their motions. We affirm the denials of relief to Jones and Jackson, and we vacate the denials of relief to Allen and Johnson and remand because their orders do not make clear that the district court understood that it could reduce the movants' sentences.

## I. BACKGROUND

Steven Jones, Alfonso Allen, Warren Jackson, and Thomas Johnson each relied on the First Step Act of 2018 to seek a sentence reduction in the district courts. The district courts denied their motions. Because these appeals raise common issues of first impression in our Circuit, we resolve them in one opinion.

In 1994, a grand jury charged Jones with conspiracy to possess with intent to distribute "more than sixteen . . . kilograms of cocaine and of a mixture and substance containing a detectable amount of [crack cocaine]," 21 U.S.C. §§ 841(a)(1), 846, aiding and abetting possession with intent to distribute "more than 600 grams of cocaine and of a mixture and substance containing a detectable amount of [crack cocaine]," *id.* § 841(a)(1), and traveling in interstate commerce with the intent to commit the crimes of "possession with intent to distribute and

4

distribution of crack cocaine," *id.*, and later did perform an unlawful activity of distributing crack cocaine, 18 U.S.C. § 1952(a). A jury returned a general verdict that found him guilty of all three counts. But the jury made no specific drug-quantity finding because Jones was prosecuted before *Apprendi v. New Jersey* made clear that drug-quantity findings that increase a defendant's punishment must be made by a jury based on a standard of proof of beyond a reasonable doubt. 530 U.S. 466, 490 (2000).

At sentencing, the district court found that Jones was responsible for at least 75 kilograms of crack cocaine. Jones's statutory range for counts one and two was 10 years to life imprisonment. *See* 21 U.S.C. § 841(b)(1)(A)(iii) (1994). His guideline range, with a total offense level of 43 and a criminal history category of I, was life imprisonment. The district court imposed a term of life imprisonment for counts one and two, and a term of 60 months of imprisonment for count three, all to run concurrently. It also imposed a five-year term of supervised release. Jones later filed several unsuccessful challenges of his convictions and sentence.

In 2019, Jones filed a motion for a reduced sentence under the First Step Act. He argued that he was eligible for a sentence reduction based on the statutory penalties in section 841(b)(1)(C) because the district court could consider only the drug quantity that a jury found beyond a reasonable doubt based on *Alleyne v. United States*, which held that *Apprendi* applies to facts that increase a defendant's

statutory mandatory-minimum sentence. 570 U.S. 99, 116 (2013). The district court denied his motion. It ruled that Jones was responsible for at least 75 kilograms of crack cocaine, and the First Step Act did not allow him to relitigate that finding. Jones filed a motion for reconsideration that again argued only that he was entitled to relief because the district court must apply the reduced penalties in section 841(b)(1)(C), and the district court denied that motion.

In 2006, a grand jury charged Allen with one count of conspiracy to distribute 50 grams or more of crack cocaine, 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii), 846 (2006), two counts of distributing a detectable amount of crack cocaine, *id.* § 841(a)(1), (b)(1)(C); 18 U.S.C. § 2, one count of possession with intent to distribute a detectable amount of powder cocaine, crack cocaine, and marijuana, 21 U.S.C. § 841(a)(1), (b)(1)(C)–(D); 18 U.S.C. § 2, possession of a short-barreled shotgun in furtherance of a felony drug offense, 18 U.S.C. §§ 2, 924(c)(1)(A), (c)(1)(B)(i), possession of a firearm and ammunition by a convicted felon, *id.* §§ 2, 922(g)(1), and possession of an unregistered short-barreled shotgun, 26 U.S.C. § 5861(d); 18 U.S.C. § 2. Before trial, the government filed notice of its intent to rely on Allen's two prior felony drug convictions to enhance his sentence. *See* 21 U.S.C. § 851(a). A jury convicted Allen on all counts and made a drug-quantity finding of 50 grams or more of crack cocaine for count one.

At sentencing, Allen's conviction for conspiracy to distribute 50 grams or more of crack cocaine carried a statutory mandatory sentence of life imprisonment because of his two prior felony drug convictions. *See id.* § 841(b)(1)(A)(iii) (2006). Allen's criminal history classified him as a career offender under the Guidelines. *See* United Sates Sentencing Guidelines Manual § 4B1.1(a) (Nov. 2008). With a total offense level of 37 and a criminal history category of VI, *id.* § 4B1.1(b)(A), Allen's guideline range would have been 360 months to life imprisonment, but because of his statutory mandatory sentence of life imprisonment, his guideline sentence became life imprisonment, *id.* § 5G1.1(b). The district court sentenced Allen to a term of life imprisonment for the count involving the 50 grams of crack cocaine, 30 years of imprisonment for the other three drug counts, 10 years of imprisonment for two of the firearm counts, all to run concurrently, and a consecutive term of 10 years of imprisonment for the final firearm count. The district court also imposed a 10-year term of supervised release. After Allen filed several unsuccessful challenges to his convictions and sentence, the President commuted his sentence to 360 months of imprisonment in 2016.

In 2019, Allen filed a motion for a reduced sentence under the First Step Act. He argued that with the retroactive application of the Fair Sentencing Act and his commutation, his statutory and guideline ranges would be lower than when he was sentenced. The district court denied the motion and ruled that "[t]he

retroactive change in the law does not benefit Allen" because he had been

"responsible for selling between 420 and 784 grams of crack cocaine per week"

and would still be subject to a guideline range of 360 months to life imprisonment.

In 1999, a grand jury charged Jackson with one count of possessing with

intent to distribute more than 50 grams of crack cocaine, 21 U.S.C. § 841(a)(1).

Before trial, the government filed notice of its intent to rely on Jackson's three

prior felony drug convictions to enhance Jackson's sentence. *See id.* § 851(a). A

jury convicted Jackson without making a drug-quantity finding.

At sentencing, the district court found that Jackson was responsible for 287

grams of crack cocaine. Jackson faced a statutory mandatory sentence of life

imprisonment because of the drug quantity and his prior felony drug convictions.

*See id.* § 841(b)(1)(A)(iii) (1994). His guideline range would have been 235 to 293

months of imprisonment based on his total offense level of 34 and criminal history

category of V, but his statutory mandatory sentence of life imprisonment mandated

a guideline sentence of life imprisonment. *See* U.S.S.G. § 5G1.1(b) (1998). The

district court sentenced Jackson to life imprisonment. After Jackson filed multiple

unsuccessful challenges to his conviction and sentence, the President commuted

his sentence to 300 months of imprisonment in 2016.

In 2019, Jackson filed a motion for a reduced sentence under the First Step

Act. He argued that he was entitled to a reduced statutory range because the district

court set his statutory penalties based on a drug-quantity finding that the jury had not found beyond a reasonable doubt. The district court relied on the drug-quantity finding of 287 grams of crack cocaine to conclude that the Fair Sentencing Act "would have had no impact on [Jackson's] sentence," and it denied the motion.

In 2008, a grand jury charged Johnson with possession with intent to distribute five grams or more of crack cocaine, 21 U.S.C. § 841(a)(1), (b)(1)(B) (2006), possession with intent to distribute a detectable amount of powder cocaine, *id.* § 841(a)(1), (b)(1)(C), possession of a firearm and ammunition as a convicted felon, 18 U.S.C. §§ 922(g)(1), 924(e), and knowingly using and carrying a firearm in furtherance of drug-trafficking felonies, *id.* § 924(c)(1)(A). Before trial, the government filed notice of its intent to rely on Johnson's four prior felony drug convictions to seek higher statutory penalties. *See* 21 U.S.C. § 851(a). A jury convicted Johnson of each count other than the count for using a firearm in furtherance of drug-trafficking felonies, and the jury found that his crack-cocaine offense involved five or more grams of crack cocaine.

At sentencing, Johnson's crack-cocaine count carried a statutory range of 10 years to life imprisonment because of the enhancement for his prior felony drug convictions. *See id.* § 841(b)(1)(B)(iii) (2006). Those prior convictions also meant the statutory range for his powder-cocaine count was zero to 30 years of imprisonment. *See id.* § 841(b)(1)(C). His felon-in-possession count carried a

9

statutory range of 15 years to life imprisonment. *See* 18 U.S.C. § 924(e)(1). As a career offender under the Guidelines, his guideline range was 360 months to life imprisonment based on a total offense level of 37 and a criminal history category of VI. *See* U.S.S.G. § 4B1.1(a), (b) (2007). The district court imposed three concurrent 360-month terms of imprisonment, followed by an eight-year term of supervised release. After Johnson filed several unsuccessful challenges to his convictions and sentence, the President commuted his sentence to a term of 240 months of imprisonment in 2017.

In 2019, Johnson filed a motion for a reduced sentence under the First Step Act in which he stressed the ways in which he has improved while in prison. The district court denied his motion. It rejected arguments by the government that Johnson was ineligible for a reduction because he was sentenced as a career offender and received a commutation, and it concluded that his statutory penalties would have been lower under the Fair Sentencing Act. But it ruled that "the First Step Act affords no further relief to" Johnson because he "is already serving a sentence below the bottom of the guideline range."

## II. STANDARD OF REVIEW

We review *de novo* questions of statutory interpretation, *United States v. Segarra*, 582 F.3d 1269, 1271 (11th Cir. 2009), and whether a district court had the authority to modify a term of imprisonment, *United States v. Phillips*, 597 F.3d

1190, 1194 & n.9 (11th Cir. 2010). We review for abuse of discretion the denial of

an eligible movant's request for a reduced sentence under the First Step Act. *See*

First Step Act of 2018, Pub. L. No. 115-391, § 404(b)–(c), 132 Stat. 5194, 5222

(stating that a district court "may" reduce a sentence but is not "require[d]" to do

so).

### III. DISCUSSION

We divide our discussion in three parts. First, we describe how the disparity

in penalties for crack- and powder-cocaine offenses led Congress to enact the Fair

Sentencing Act. Second, we discuss the authority of a district court to reduce a

sentence under the First Step Act. Third, we conclude that the district courts did

not err in denying the motions of Jones and Jackson but that we must vacate the

orders denying Allen's and Johnson's motions and remand for further proceedings.

The parties now agree, as do we, that the movants who received an executive grant

of clemency—Allen, Jackson, and Johnson—are not ineligible for a reduction on

that basis, so we need not discuss that issue further.

*A. The 100-to-1 Ratio for Crack- and Powder-Cocaine Offenses.*

When the movants were sentenced, the statutory penalties for drug-

trafficking offenses involving crack cocaine were the same as the statutory

penalties for drug-trafficking offenses involving 100 times as much powder

cocaine. *See Kimbrough v. United States*, 552 U.S. 85, 91 (2007) (citing 21 U.S.C.

§ 841 (2006)). A statutory range of 10 years to life imprisonment applied to drug traffickers dealing in 50 grams or more of crack cocaine or 5,000 grams or more of powder cocaine. 21 U.S.C. § 841(b)(1)(A) (2006). A statutory range of five to 40 years of imprisonment applied to drug traffickers dealing in at least five grams of crack cocaine or at least 500 grams of powder cocaine. *Id.* § 841(b)(1)(B). And a statutory range of zero to 20 years of imprisonment applied to drug traffickers dealing in less than five grams of crack cocaine or less than 500 grams of powder cocaine. *Id.* § 841(b)(1)(C). Each subsection of the statute also provided for increased statutory penalties based on certain factual predicates, such as prior felony drug convictions. *See id.* § 841(b)(1)(A)–(C).

The United States Sentencing Commission condemned the disparity between the penalties for crack- and powder-cocaine offenses. *See, e.g.*, U.S. Sentencing Comm'n, *Report to the Congress: Cocaine and Federal Sentencing Policy* 2, 7–8 (May 2007); U.S. Sentencing Comm'n, *Special Report to the Congress: Cocaine and Federal Sentencing Policy* 1–2, 9 (Apr. 1997). "[T]o keep similar drug-trafficking sentences proportional," the Commission based the offense levels in the Guidelines on the mandatory-minimum penalties in the statute, which, of course, included the 100-to-1 ratio. *Dorsey v. United States*, 567 U.S. 260, 267–68 (2012). But the Commission spent the next two decades urging Congress to amend those penalties. *Id.* at 268; *see also Kimbrough*, 552 U.S. at 97–98. The Commission

argued that the harsher penalties for offenses involving crack instead of powder

cocaine were unjustified and undermined respect for the criminal justice system

because of the "widely-held perception" that the disparate penalties "promote[d]

unwarranted disparity based on race." *Kimbrough*, 552 U.S. at 97–98 (internal

quotation marks omitted); *accord Dorsey*, 567 U.S. at 268; Rachel E. Barkow,

*Categorical Mistakes: The Flawed Framework of the Armed Career Criminal Act

and Mandatory Minimum Sentencing*, 133 Harv. L. Rev. 200, 215–16 (2019).

Congress amended the penalties for crack-cocaine offenses when it enacted

the Fair Sentencing Act of 2010. *See* Fair Sentencing Act of 2010, Pub. L. No.

111-220, 124 Stat. 2372 (2010). The Act increased the quantity of crack cocaine

necessary to trigger the higher penalties in subsections (b)(1)(A)(iii) and (B)(iii).

Fair Sentencing Act § 2(a). A defendant now must traffic at least 280 grams of

crack cocaine to trigger the highest penalties, 21 U.S.C. § 841(b)(1)(A)(iii) (2012),

and 28 grams of crack cocaine to trigger the intermediate penalties, *id.*

§ 841(b)(1)(B)(iii). *See* Fair Sentencing Act § 2(a). These amended penalties

reduced the crack-to-powder-cocaine ratio from 100-to-1 to 18-to-1. *Dorsey*, 567

U.S. at 269. The Act also eliminated the five-year mandatory-minimum sentence

that had applied to simple possession of crack cocaine. Fair Sentencing Act § 3;

*see also* 21 U.S.C. § 844(a) (2006). But the amended penalties applied only to

defendants who were sentenced on or after the effective date of the Fair Sentencing Act. *Dorsey*, 567 U.S. at 264.

### B. The First Step Act Permits District Courts to Reduce the Term of Imprisonment for Certain Previously Sentenced Crack-Cocaine Offenders.

When Congress enacted the First Step Act of 2018, it granted district courts discretion to reduce the sentences of crack-cocaine offenders in accordance with the amended penalties in the Fair Sentencing Act. *See* First Step Act § 404. A district court lacks the inherent authority to modify a term of imprisonment. 18 U.S.C. § 3582(c); *United States v. Puentes*, 803 F.3d 597, 606 (11th Cir. 2015). But it may do so, as relevant here, to the extent that a statute expressly permits. 18 U.S.C. § 3582(c)(1)(B). And the First Step Act expressly permits district courts to reduce a previously imposed term of imprisonment.

The First Step Act permits a district "court that imposed a sentence for a covered offense" to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed." First Step Act § 404(b). It defines "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act . . . that was committed before August 3, 2010." *Id.* § 404(a). A district court may not "entertain a motion" from a defendant who already benefitted from the Fair Sentencing Act by having his sentence imposed or reduced "in accordance with" sections two or three of the Fair Sentencing Act. *Id.*

§ 404(c). Nor may a district court "entertain a motion" from a defendant who already had a motion under section 404 of the First Step Act "denied after a complete review of the motion on the merits." *Id.* The Act makes clear that the relief in subsection (b) is discretionary: "Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section." *Id.*

To be eligible for a reduction, the district court must have "imposed a sentence" on the movant for a "covered offense." *Id.* § 404(a)–(b). The First Step Act defines covered offense as "a violation of a Federal criminal statute, *the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act . . .* , that was committed before August 3, 2010." *Id.* § 404(a) (emphasis added). The meaning of "covered offense" depends on what the clause in italics—the "penalties clause"—modifies.

We see two possibilities. The penalties clause could modify the phrase "violation of a Federal criminal statute." Or it could modify only the shorter phrase "Federal criminal statute." *See United States v. Johnson*, 19-874, 2020 WL 3023063, at *7 (2d Cir. June 5, 2020); *United States v. Boulding*, No. 19-1590, 19-1706, 2020 WL 2832110, at *6 (6th Cir. June 1, 2020); *United States v. Shaw*, 957 F.3d 734, 738 (7th Cir. 2020); *United States v. Smith*, 954 F.3d 446, 448–49 (1st Cir. 2020); *United States v. Jackson*, 945 F.3d 315, 320 (5th Cir. 2019); *United*

15

*States v. McDonald*, 944 F.3d 769, 771–72 (8th Cir. 2019); *United States v. Wirsing*, 943 F.3d 175, 185–86 (4th Cir. 2019).

The better reading is that the penalties clause modifies the whole phrase "violation of a Federal criminal statute." A violation of a federal criminal statute is commonly called an "offense." *Offense*, *Black's Law Dictionary* (11th ed. 2019) ("A violation of the law; a crime . . . ."). This definition makes sense because the term we are defining is "covered offense." *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 36, at 232 (2012) ("[T]he word being defined is the most significant element of the definition's context."); *id.* (explaining that there is a presumption that legal drafters give defined words their "general meaning" (internal quotation marks omitted)). A movant's offense is a covered offense if section two or three of the Fair Sentencing Act modified its statutory penalties. Section two of the Fair Sentencing Act, the only section applicable in these appeals, modified the statutory penalties for crack-cocaine offenses that have as an element the quantity of crack cocaine provided in subsections 841(b)(1)(A)(iii) and (B)(iii). It did so by increasing the quantity of crack cocaine necessary to trigger those penalty provisions. *See* Fair Sentencing Act § 2(a). So a movant has a "covered offense" if his offense triggered a statutory penalty that has since been modified by the Fair Sentencing Act.

The alternative interpretation primarily relies on the nearest-reasonable-referent canon, which provides that a "modifier normally applies only to the nearest reasonable referent." Scalia & Garner, *Reading Law* § 20, at 152. The relevant modifier in the definition of "covered offense" is the penalties clause. The movants argue that this canon suggests that the penalties clause modifies only the phrase "Federal criminal statute" because that is the referent that immediately precedes the penalties clause. *See, e.g.*, *Jackson*, 945 F.3d at 320; *Wirsing*, 943 F.3d at 185. But that reading ignores the fact that the canon does "not appl[y]" when a "modifier directly follows a concise and integrated clause," *Cyan, Inc. v. Beaver Cty. Emps. Ret. Fund*, 138 S. Ct. 1061, 1077 (2018) (internal quotation marks omitted), such as "a violation of a Federal criminal statute," *see* Scalia & Garner, *Reading Law* § 20, at 152 (explaining that a modifier "applies only to the nearest *reasonable* referent" (emphasis added)).

The decision of the Supreme Court in *Cyan* is instructive. In *Cyan*, the Court interpreted a statutory provision that stated: "Any covered class action brought in any State court involving a covered security, *as set forth in subsection (b) of this section*, shall be removable to the Federal district court for the district in which the action is pending, and shall be subject to subsection (b) of this section." 138 S. Ct. at 1075 (emphasis added) (quoting 15 U.S.C. § 77p(c)). Subsection (b) requires dismissal of certain class actions—namely, those premised on state law that allege

misconduct related to securities—whether the class action is brought in state or federal court. *Id.* at 1067, 1075 (citing 15 U.S.C. § 77p(b)). The Supreme Court explained that the natural reading of the relevant statutory provision is that when a class action set forth in subsection (b) is filed in state court, the defendant may remove it to federal court to ensure compliance with the mandatory-dismissal provision. *Id.* at 1075.

The Supreme Court rejected the government's argument that the "rule of the last antecedent" mandated a different interpretation. *Id.* at 1076 (internal quotation marks omitted). The government contended that the "as-set-forth" clause did not refer to the entire preceding clause but instead referred only to the immediately preceding phrase "involving a covered security." *Id.* (internal quotation marks omitted). It argued that subsections (b)(1) and (b)(2) set forth specific types of misconduct related to the sale of a covered security. *Id.* So the government argued a covered class action that alleged the kind of misconduct in those subsections was subject to removal, regardless of whether it was premised on state law, that is, regardless of whether the class action was the type set forth in subsection (b). *Id.* In rejecting that argument, the Supreme Court explained that the "as-set-forth" clause "goes back to the beginning of the preceding clause" because the clause "hangs together as a unified whole, referring to a single thing (a type of class action)." *Id.* at 1077. The rule of the last antecedent was not to the contrary because that rule

does not apply "when the modifier directly follows a concise and integrated clause." *Id.* (internal quotation marks omitted). *Contra Mellouli v. Lynch*, 135 S. Ct. 1980, 1989–90 (2015) (applying the canon to the long and segmented phrase "convicted of a violation of . . . any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in [section] 802)" to conclude that "relating to a controlled substance" did not reach all the way back to modify "violation" (alteration adopted) (quoting 8 U.S.C. § 1227 (a)(2)(B)(i))).

In the definition of "covered offense," the penalties clause directly follows the concise and integrated clause "a violation of a Federal criminal statute." The clause refers to a single thing—a type of violation. Indeed, this clause functions as a unified phrase elsewhere in the definition of covered offense. Recall, "covered offense" means "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act . . . , *that was committed before August 3, 2010*." First Step Act § 404(a) (emphasis added). The final clause modifies the unified phrase because one cannot "commit" a "Federal criminal statute," only a "*violation* of a Federal criminal statute."

The alternative interpretation—that the penalties clause modifies only "Federal criminal statute"—would mean that any movant sentenced for a drug-trafficking offense would have a covered offense even if his offense did not involve crack cocaine. Section 841 is the applicable drug-trafficking statute.

Subsection (a) provides that it is unlawful to traffic a variety of controlled or counterfeit substances. *See* 21 U.S.C. § 841(a). Subsection (b) provides the penalties for the various offenses involving those substances. *See id.* § 841(b). The Fair Sentencing Act modified some of the penalties that apply to this statute— whether defined as subsection (a) or the entire statute—by amending the quantity of crack cocaine necessary to trigger the higher penalties in two provisions of subsection (b). *See* Fair Sentencing Act § 2(a). So this alternative interpretation would mean that a movant with *any* drug-trafficking offense—even, say, a heroin offense—would have a "covered offense" because the movant violated section 841 and the Fair Sentencing Act modified some of the penalties that apply to section 841, even though the Act did not alter the penalties for heroin offenses. *See Smith*, 954 F.3d at 450 & n.5. In other words, this alternative interpretation would mean that the First Step Act covers offenses unaffected by the Fair Sentencing Act.

Interpreting "Federal criminal statute" to mean "statutory provision" is not a viable alternative. Some of our sister circuits have held that a movant has a covered offense if he violated section 841(b)(1)(A)(iii) or (B)(iii). *See Johnson*, 2020 WL 3023063, at 7 n.6; *Wirsing*, 943 F.3d at 186. But it is unnatural to read these subsections, which provide the *penalties* for violations of section 841(a) involving crack cocaine, as being the "statute" to which the penalties clause refers, especially because doing so requires concluding that the Fair Sentencing Act modified the

20

penalties that apply to these "statutes" by modifying the provisions themselves. Our sister circuits attempt to avoid application of the First Step Act to movants with offenses involving a controlled substance other than crack cocaine by ignoring that drug-trafficking defendants who "violate" a penalty provision in subsection 841(b) *also* violate section 841, a statute for which the Fair Sentencing Act modified the statutory penalties.

Reading the penalties clause as modifying the unified phrase "violation of a Federal criminal statute" avoids these oddities. It makes clear that the clause refers to the crack-cocaine offenses for which sections 841(b)(1)(A)(iii) and (B)(iii) provide the penalties. Those provisions are two of the statutory penalty provisions that apply to violations of section 841(a), and they are the only provisions that the Fair Sentencing Act modified. *See* 21 U.S.C. § 841(b); Fair Sentencing Act § 2(a); *see also* Scalia & Garner, *Reading Law* § 2, at 56 ("[W]ords are given meaning by their context, and context includes the purpose of the text[, which, of course,] . . . must be derived from the text."). Our interpretation leads to the same end result as the interpretation by our sister circuits, but it does so in a way that is consistent with the text and structure of section 404 of the First Step Act.

To be sure, the penalties clause uses the past tense—"were modified"—to describe the effect that the Fair Sentencing Act had on the statutory penalties. And the Fair Sentencing Act did not modify the penalties for any movant's earlier

statutory violation because the Act did not apply retroactively. *See Jackson*, 945

F.3d at 320 (citing *United States v. Rose*, 379 F. Supp. 3d 223, 229 (S.D.N.Y.

2019)). But even so, the Fair Sentencing Act modified the statutory penalties for

certain crack-cocaine offenses (that is, covered offenses), which means the First

Step Act permits courts to review whether the Fair Sentencing Act altered the

penalties for the movant's category of offense.

To determine the offense for which the district court imposed a sentence,

district courts must consult the record, including the movant's charging document,

the jury verdict or guilty plea, the sentencing record, and the final judgment. From

these sources, the district court must determine whether the movant's offense

triggered the higher penalties in section 841(b)(1)(A)(iii) or (B)(iii). If so, the

movant committed a covered offense.

We reject the argument by the government that a district court must

determine a movant's "covered offense" by considering the specific quantity of

crack cocaine involved in the movant's violation. The government argues that

because Congress used the term "violation" instead of "conviction," "covered

offense" means all the movant's conduct underlying the statutory violation, not

only the finding of drug quantity that triggered the statutory penalty. The

government would have courts consider a finding of drug quantity anywhere in the

record, such as a finding that was necessary for determining only relevant conduct under the Sentencing Guidelines or a finding in a postsentencing proceeding.

That argument impermissibly isolates the word "violation" from its context, which establishes that a covered offense is an *offense*. *See* First Step Act § 404(a). Offenses are made up of elements. *See Elements of Crime, Black's Law Dictionary* (11th ed. 2019). The elements for the movants' offenses are found in section 841. And the specific elements in that statute that matter for eligibility under the First Step Act are the two drug-quantity elements in sections 841(b)(1)(A)(iii) and (b)(1)(B)(iii) because section two of the Fair Sentencing modified only offenses that include one of those drug-quantity elements. When the movants committed their offenses, the drug-quantity element in section 841(b)(1)(A)(iii) was 50 grams or more of crack cocaine, and the drug-quantity element in section 841(b)(1)(B)(iii) was five grams or more of crack cocaine. The range for each element meant that the movants did not need to be responsible for *exactly* 50 grams or five grams of crack cocaine—any quantity in the range sufficed and the offense would have as an element either 50 grams or more or five grams or more of crack cocaine, respectively. *See Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016) (explaining that some statutes "enumerate[] various factual means of committing a single element"). The ranges did *not* create an infinite number of crack-cocaine offenses based on the specific means by which the elements may be satisfied, such

23

as distribution of 750.25 grams of crack cocaine. The actual drug-quantity involved in the movant's offense is irrelevant as far as the element and the *offense* are concerned. The actual quantity is only the *means* of satisfying the drug-quantity element. *See id.* That quantity constitutes relevant conduct under the Sentencing Guidelines, *see* U.S.S.G. § 1B1.3 (2018), but it does not define the offense.

Although we reject the argument that a movant's covered offense is determined by the actual quantity of crack cocaine involved in his violation, we acknowledge that a district court, of course, could consider its previous findings of relevant conduct in deciding whether to exercise its discretion to reduce an eligible movant's sentence under section 404(b) of the First Step Act. *See* First Step Act § 404(b). The actual quantity of crack cocaine involved in a violation is a key factor for a sentence modification just as it is when a district court imposes a sentence. *See* 18 U.S.C. § 3553(a)(1) (instructing district courts to consider the nature and circumstances of the offense when imposing a sentence). But we do not read the Act as allowing the district court to use its earlier findings of relevant conduct that were unrelated to the movant's statutory penalty to conclude that he did not commit a covered offense. These determinations of whether a movant is eligible for relief and whether to grant the movant relief are separate.

We also reject the movants' argument that district courts may not, in making the "covered offense" determination, consider a previous drug-quantity finding that

was necessary to trigger the statutory penalty if it was made by a judge. The

movants argue that when a jury did not make a drug-quantity finding, a district

court should consider only that the offense involved a detectable amount of crack

cocaine—punishable by section 841(b)(1)(C)—regardless of the statutory penalty

that the district court applied at sentencing. To be sure, we now understand that a

jury was constitutionally required to find the nature and quantity of the controlled

substance involved in the offense if that finding increased the statutory penalty. *See*

*Apprendi*, 530 U.S. at 490; *see also Danforth v. Minnesota*, 552 U.S. 264, 271

(2008) ("[T]he source of a 'new rule' is the Constitution itself, not any judicial

power to create new rules of law. Accordingly, the underlying right necessarily

pre-exists our articulation of the new rule."); *cf. Lester v. United States*, 921 F.3d

1306, 1312–15 (11th Cir. 2019) (W. Pryor, J., respecting the denial of rehearing en

banc) (explaining that the Guidelines were never truly mandatory because that

practice *always* violated the Sixth Amendment). But just as a movant may not use

*Apprendi* to collaterally attack his sentence, *see McCoy v. United States*, 266 F.3d

1245, 1258 (11th Cir. 2001), he cannot rely on *Apprendi* to redefine his offense for

purposes of a First Step Act motion. Moreover, taken to its logical end, the

movants' argument would mean that a movant convicted before *Apprendi* is

ineligible for relief under the First Step Act because the Fair Sentencing Act did

not modify the statutory penalties for offenses involving only a detectable amount of crack cocaine.

All four of the movants were sentenced for a covered offense. The district court sentenced Jones for, among others, the offenses of conspiracy to possess with intent to distribute 50 grams or more of crack cocaine and possession with intent to distribute 50 grams or more of crack cocaine. Those offenses were charged in his superseding indictment as conspiracy to possess with intent to distribute more than 16 kilograms of powder and crack cocaine and possession with intent to distribute more than 600 grams of powder and crack cocaine. But the final judgment lists both offenses as solely crack-cocaine offenses, and the district court's drug-quantity finding involved only crack cocaine. The record establishes that the district court treated both counts as crack-cocaine offenses when it "imposed a sentence" on Jones. *See* First Step Act § 404(b) (explaining that the district court must have "imposed a sentence for a covered offense"). The Fair Sentencing Act modified the statutory penalties for offenses like Jones's that involve 50 grams or more of crack cocaine from 10 years to life imprisonment to five to 40 years of imprisonment. *Compare* 21 U.S.C. § 841(b)(1)(A)(iii) (1994), *with id.* § 841(b)(1)(B)(iii) (2012). Jones's offenses qualify as covered offenses.

The district court sentenced Allen for, among others, the offense of conspiracy to distribute 50 grams or more of crack cocaine. That offense was

charged in his indictment and found by a jury. The statutory penalty for that offense was originally life imprisonment because of Allen's two prior felony drug convictions. *See id.* § 841(b)(1)(A)(iii) (2006). Under the Fair Sentencing Act, that same offense would lead to a statutory range of 10 years to life imprisonment. *See id.* § 841(b)(1)(B)(iii) (2012). The larger quantity of crack cocaine that the district court found—"between 420 and 784 grams of crack cocaine per week"—did not trigger the statutory penalty for Allen's offense. Because the Fair Sentencing Act modified the statutory penalties for Allen's offense, he has a "covered offense."

The district court sentenced Jackson for the offense of possession with intent to distribute 50 grams or more of crack cocaine. Jackson's indictment charged him with that offense, and although the jury did not make a drug-quantity finding, the district court found at sentencing a drug quantity of at least 50 grams of crack cocaine. The statutory penalty for Jackson's offense was originally life imprisonment because of Jackson's drug quantity and three prior felony drug convictions. *See id.* § 841(b)(1)(A)(iii) (1994). The Fair Sentencing Act modified the penalties for his offense to be 10 years to life imprisonment. *See id.* § 841(b)(1)(B)(iii) (2012). Jackson has a covered offense.

The district court sentenced Johnson for, among others, the offense of possession with intent to distribute five grams or more of crack cocaine. That is the offense in his indictment and found by a jury. Because of Johnson's four prior

felony drug convictions, the statutory penalty for his offense was 10 years to life imprisonment. *See id.* § 841(b)(1)(B)(iii) (2006). After the Fair Sentencing Act, the statutory range for that same offense changed to zero to 30 years of imprisonment. *See id.* § 841(b)(1)(C) (2012). Because the Fair Sentencing Act modified the statutory penalties for Johnson's offense, he too has a "covered offense."

The movants all have a "covered offense" because the district court sentenced them for violations of section 841 for which the Fair Sentencing Act modified the statutory penalties. But a movant's satisfaction of the "covered offense" requirement does not necessarily mean that a district court can reduce his sentence. Any reduction must be "as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed." First Step Act § 404(b).

This "as-if" requirement imposes two limits relevant to these appeals. First, it does not permit reducing a movant's sentence if he received the lowest statutory penalty that also would be available to him under the Fair Sentencing Act. Second, in determining what a movant's statutory penalty would be under the Fair Sentencing Act, the district court is bound by a previous finding of drug quantity that could have been used to determine the movant's statutory penalty at the time of sentencing.

If the movant's sentence would have necessarily remained the same had the Fair Sentencing Act been in effect, then the district court lacks the authority to reduce the movant's sentence. Any reduction the district court would grant would not be "as if" the Fair Sentencing Act had been in effect. That is, the First Step Act does not permit a reduction when the Fair Sentencing Act could not have benefitted the movant.

To be clear, the Constitution does not prohibit district courts, in deciding motions for reduced sentences under the First Step Act, from relying on earlier judge-found facts that triggered statutory penalties that the Fair Sentencing Act later modified. In determining what a movant's statutory penalties would be under the Fair Sentencing Act, the district court is not increasing the movant's penalty. It is either maintaining the movant's penalty or *decreasing* it. *See Alleyne*, 570 U.S. at 103 ("[A]ny fact that *increases* the mandatory minimum is an 'element' that must be submitted to the jury." (emphasis added)); *Apprendi*, 530 U.S. at 490 ("Other than the fact of a prior conviction, any fact that *increases* the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (emphasis added)); *cf. Dillon v. United States*, 560 U.S. 817, 825, 828–29 (2010) (holding that the Sixth Amendment does not bar a district court from finding facts that determine a mandatory guideline range in a section 3582(c)(2) proceeding). And unlike the statutory penalties that applied

when the movants were originally sentenced, the amended statutory penalties in the First Step Act apply to the movants as an act of legislative grace left to the discretion of the district court.

> *C. The District Courts Did Not Err in Denying the Motions of Jones and Jackson but May Have Erred in Denying the Motions of Allen and Johnson.*

The district courts did not err in denying the motions of Jones and Jackson. When the district court sentenced Jones, its drug-quantity finding of 75 kilograms of crack cocaine subjected Jones to a statutory range of 10 years to life imprisonment. The only argument Jones made that the First Step Act entitled him to a reduced sentence was that the absence of a drug-quantity finding by the jury meant that his statutory range should be zero to 20 years of imprisonment. The district court did not err in refusing to allow Jones to relitigate his drug-quantity finding. Jackson was sentenced to a statutory mandatory sentence of life imprisonment based on a drug-quantity finding of 287 grams of crack cocaine and his three prior felony drug convictions. The district court correctly concluded that it could not reduce Jackson's sentence because his drug-quantity finding meant that he would face the same statutory penalty of life imprisonment under the Fair Sentencing Act. *See* 21 U.S.C. § 841(b)(1)(A)(iii) (2012).

The district court had the discretion to reduce the sentences of Allen and Johnson. At their sentencings, the district court determined their statutory penalties based on the drug quantities that the juries found beyond a reasonable doubt. The

jury in Allen's trial found a drug quantity of 50 grams or more of crack cocaine. And Johnson's jury found a drug quantity of five grams or more of crack cocaine. Allen's and Johnson's statutory ranges would have been lower if the Fair Sentencing Act had been in effect when they committed their offenses. Allen's statutory range would have been 10 years to life imprisonment instead of a mandatory sentence of life imprisonment. *Compare id.* § 841(b)(1)(A)(iii) (2006), *with id.* § 841(b)(1)(B)(iii) (2012). And Johnson's statutory range would have been zero to 30 years of imprisonment instead of 10 years to life imprisonment. *Compare id.* § 841(b)(1)(B)(iii) (2006), *with id.* § 841(b)(1)(C) (2012).

The district court had the authority to reduce Allen's and Johnson's sentences, but it was not required to do so. The First Step Act states that "[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section." First Step Act § 404(c). District courts have wide latitude to determine whether and how to exercise their discretion in this context. In exercising their discretion, they may consider all the relevant factors, including the statutory sentencing factors, 18 U.S.C. § 3553(a). *See United States v. Allen*, 956 F.3d 355, 357 (6th Cir. 2020). A district court abuses its discretion when it "applies an incorrect legal standard." *Diveroli v. United States*, 803 F.3d 1258, 1262 (11th Cir. 2015) (internal quotation marks omitted).

The order denying relief to Allen is ambiguous as to whether the district court understood that it could reduce Allen's sentence. As a reminder, the district court sentenced Allen to a statutory mandatory sentence of life imprisonment, and the President later commuted his sentence to 360 months of imprisonment. In denying Allen's motion, the district court explained that "[t]he retroactive change in the law does not benefit Allen" because it "found that Allen was responsible for selling between 420 and 784 grams of crack cocaine per week. As a career offender, Allen would still score out to a Level 37, with a Criminal History Category Six for a range of 360 months-life."

The district court might have incorrectly concluded that Allen was ineligible for a reduction either because of the drug-quantity finding or because of his designation as a career offender. The government stated at oral argument that it viewed the district court as ruling that it lacked the authority to reduce Allen's sentence. Allen's commuted sentence is at the bottom of the guideline range, which may have caused the district court to conclude that Allen was ineligible for a further reduction to his sentence. So we vacate the order and remand for further consideration.

The order denying relief to Johnson is also ambiguous as to whether the district court understood its authority to reduce Johnson's sentence below the revised guideline range. As a reminder, the district court sentenced Johnson as a

career offender to 360 months of imprisonment, and the President later commuted
his sentence to 240 months of imprisonment. In denying Johnson's motion, the
district court correctly rejected arguments by the government that Johnson was
ineligible for a reduced sentence because of his commutation and career-offender
status. It then explained that Johnson "appear[ed] eligible for relief" but that
"[n]otwithstanding the statutory revisions, all parties appear to agree" that because
of the commutation, Johnson's sentence is already nearly two years less than the
bottom of his revised guideline range. The district court concluded by "find[ing]
that the First Step Act affords no further relief to [Johnson] in this case."

We cannot be sure that the district court understood its authority to reduce
Johnson's sentence below the revised guideline range. The ambiguous phrase that
the First Step Act "affords no further relief" leaves us unsure of the grounds for the
ruling. The government erroneously argued in the district court that Johnson was
ineligible for a reduction because his sentence was already below the revised
guideline range. If the district court ruled that it could not grant Johnson's motion,
that ruling would be erroneous because neither the First Step Act nor section
3582(c)(1)(B) barred the district court from reducing Johnson's sentence below the
revised guideline range. It is also possible that the district court correctly
understood that it *could* reduce Johnson's sentence but *chose* not to because
Johnson's commutation already afforded him what it believed to be sufficient

relief. We cannot tell which of these readings is correct, so we vacate the order and remand for further proceedings.

## IV. CONCLUSION

We **AFFIRM** the orders denying Jones's and Jackson's motions to reduce their sentences. We **VACATE** the orders denying Allen's and Johnson's motions and **REMAND** for further proceedings.

**UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

June 16, 2020

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  19-11505-GG
Case Style:  USA v. Steven Jones
District Court Docket No:  1:94-cr-00067-WS-1

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF")
system, unless exempted for good cause. Non-incarcerated pro se parties are permitted to use the ECF
system by registering for an account at www.pacer.gov. Information and training materials related to
electronic filing, are available at www.ca11.uscourts.gov.** Enclosed is a copy of the court's decision filed today
in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later
date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for
rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate
filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the
time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content
of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list
of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-
1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition
for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time
spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of
a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404)
335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

For questions concerning the issuance of the decision of this court, please call the number referenced in the
signature block below. For all other questions, please call Joseph Caruso, GG at (404) 335-6177.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6151

OPIN-1 Ntc of Issuance of Opinion